J-S54005-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SIR JOHN WITHROW | : | |
| | : | |
| Appellant | : | No. 1287 WDA 2016 |

Appeal from the Judgment of Sentence July 25, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013193-2015

BEFORE: OTT, J., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                    FILED DECEMBER 19, 2017

Sir John Withrow appeals from the judgment of sentence entered on July 25, 2016, in the Allegheny County Court of Common Pleas, made final by the denial of post-sentence motions on August 9, 2016.[1] The trial court imposed a term of three to six years' imprisonment, following a non-jury trial in which Withrow was convicted of person not to possess a firearm, possession with intent to deliver (heroin), and driving while his license was suspended.[2]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Withrow was tried jointly with his co-defendant, Gene Livingston, III, who was convicted of person not to possess a firearm. Livingston has also appealed his judgment of sentence, and he raises similar, but not identical claims, to the one filed by Withrow. See Commonwealth v. Livingston, 792 WDA 2016.

[2] See 18 Pa.C.S. § 6105(a), 35 P.S. § 780-113(a)(30), and 18 Pa.C.S. § 6106(a)(1), respectively.

On appeal, Withrow contends the trial court erred in denying his motion to suppress physical evidence and there was insufficient evidence to convict him of gun possession.  For the reasons below, we affirm.

The trial court set forth the factual history as follows:

> Officer Ryan Coll of the McKees Rocks Police Department was on duty on November 8, 2015.  At approximately 3:55 a.m., he received a dispatch that three males were passed out in a Ford Escort in the parking lot of a CoGo's convenience store in McKees Rocks.  When he arrived at the CoGo's, Officer Coll observed the Ford Escort but there were actually six people inside the vehicle.  The Ford Escort was a small vehicle.  The vehicle's engine was running.  There was one male in the driver's seat, one male in the front passenger seat and three females and one male in the rear seats of the vehicle.  All six people were sleeping.  Sir John Withrow was in the driver's seat.  Gene Livingston, who was a large man, was in the front passenger seat.  McKees Rocks police officer Roche arrived on the scene.  He proceeded to the driver's side window.  Officer Coll remained at the front passenger window.  Due to the officers' fear that serious injury could occur to one of the occupants or a pedestrian if the vehicle was accidentally placed into gear by one of the sleeping occupants, both officers began to knock on the windows.  Despite the knocking, none of the occupants woke up.  After unsuccessfully attempting to wake the occupants, Officer Roche checked to see if the passenger door was unlocked.  The passenger door was unlocked so he opened the door, reached into the vehicle, turned the engine off and removed the keys from the ignition.  Mr. Livingston opened his eyes briefly then went back to sleep.  Eventually, the officers were able to wake Mr. Withrow and Mr. Livingston.  Officer Roche returned to his patrol vehicle to run a background check on Mr. Withrow and Mr. Livingston through dispatch.  Officer Coll remained with the vehicle.  While Officer Roche was checking with dispatch, Officer Coll observed Mr. Livingston reaching with his left hand towards the center console of the vehicle.  Mr. Withrow was also observed making movements with his right hand toward the console.  Officer Coll could not see what they were reaching for.  Officer Coll ordered both males to show their hands and to stop making movements.

Mr. Livingston continued to move around inside the vehicle. Fearing for his safety, Officer Coll ordered Mr. Livingston out of the vehicle. He also ordered Mr. Livingston to sit on the sidewalk. At this point, Officer Roche returned to the vehicle. Based on Officer Roche's background check, officers learned that Mr. Withrow's driver's license was suspended. Due to that fact, Officer Coll called for a tow truck. Officer Roche asked Mr. Withrow to exit the vehicle. Mr. Withrow refused to exit the vehicle. Mr. Withrow began to take his jacket off and again reached toward the center console. Officer Roche then physically removed Mr. Withrow from the vehicle. After Officer Roche conducted a pat-down search of Mr. Withrow for weapons, Mr. Withrow consented to a search of his person. Heroin and crack cocaine were discovered. Mr. Withrow was taken into custody and placed into Officer Roche's patrol vehicle. The remaining occupants of the vehicle woke up. They were each checked by other officers who responded to the scene and told they were free to go.

Officer Coll was about to begin conducting an inventory search of the vehicle before the tow truck arrived. Prior to beginning the inventory search, Officer Coll noticed a firearm on the top of the console between the driver's and front passenger's seats. The firearm was in plain view and he was able to observe it from outside the vehicle. He did not see the firearm when he turned the ignition off. He immediately took possession of the firearm and he found it to be loaded. At this point, Mr. Livingston was also placed under arrest.

Trial Court Opinion, 1/19/2017, at 1-3.

Withrow was charged with multiple offenses related to the incident.

Withrow filed a suppression motion on April 8, 2016.[3] A motion hearing was

_____

[3] In the motion, Withrow argued: (1) the officers lacked the necessary reasonable suspicion to detain them after completing the original purpose of the investigatory detention; and (2) following the impermissible further delay and detention, the police lacked the necessary probable cause to perform the search of their persons or the motor vehicle.

held on May 2, 2016,[4] immediately before a stipulated non-jury trial.  The trial court denied the suppression motion.  The court subsequently convicted Withrow of the above-stated crimes, and on July 25, 2016, sentenced him to a term of three to six years' incarceration.  On May 12, 2016, Withrow filed a post-sentence motion, alleging:  (1) there was insufficient evidence to support his conviction;  (2) the verdict was against the weight of the evidence;  and (3) the trial court should modify his sentence.  On May 17, 2016, the trial court denied his motion.  This timely appeal followed.[5]

In his first issue, Withrow contends the trial court erred in denying his motion to suppress the evidence because he was searched without probable cause or reasonable suspicion.  See Withrow's Brief at 11.  Citing Commonwealth v. Powell, 934 A.2d 721 (Pa. Super. 2007), he contends the facts do not support an investigative detention:

> First and foremost, upon arriving at the Escort, the arresting officers observed six individuals sleeping in a parked vehicle on private property.  The Escort was not parked illegally, nor was the fact that it was running particularly unusual given the need of the occupants to remain warm on a November night.  While the officers did note that the station is located in a "high crime area," … this is insufficient on its own to sustain the detention.  Most importantly, the officers did not observe a firearm or contraband in the possession of any occupant in the vehicle until after the

_____

[4]  At that time, Livingston orally joined Withrow's suppression motion.

[5]  On August 30, 2016, the trial court ordered Withrow to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After requesting an extension of time, Withrow complied with the court's directive on October 13, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 19, 2017.

investigatory detention had been initiated and Mr. Withrow had been removed and searched. At that time, an officer had already reached into the vehicle and taken the keys. In doing so he observed no contraband, no suspicious bulges, and no weapons or other articulable facts to believe anyone was armed. Moreover, the officer removed the passenger, but allowed Mr. Withrow to remain in the car until [the] officers confirmed his license was suspended. The standard relied upon in Powell to establish a threat to officer safety is clearly not met in the instant case. Officers felt safe enough to allow him to remain in the vehicle.

Withrow's Brief at 13-14.

Our standard of review is well-settled:

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

Commonwealth v. Mason, 130 A.3d 148, 151–152 (Pa. Super. 2015) (quotation omitted), appeal denied, 138 A.3d 3 (Pa. 2016).

Although the police officers did not stop Withrow's car, the encounter "must be scrutinized to see if it passes constitutional muster." Commonwealth v. DeHart, 745 A.2d 633, 636 (Pa. Super. 2000).

Both the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect the people from unreasonable searches and seizures. In the Interest of D.M., 566 Pa. 445, 781 A.2d 1161, 1163 (Pa. 2001). The Fourth Amendment and Article I, § 8 have long been interpreted to protect the people from unreasonable government intrusions into their privacy. United States v. Chadwick, 433 U.S. 1, 7, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); Commonwealth v. Shaw, 476 Pa. 543, 383 A.2d 496, 499 (Pa. 1978). "The reasonableness of a governmental intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." Shaw, at 499 (collecting cases).

Commonwealth v. McCree, 924 A.2d 621, 626 (Pa. 2007). There are three types of interactions between citizens and police officers, which require different levels of validation based upon the nature of the interaction.

These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

Commonwealth v. Baldwin, 147 A.3d 1200, 1202-1203 (Pa. Super. 2016) (citation omitted).

Pertinent to this appeal, we note that when analyzing whether police activity constitutes a mere encounter or an investigatory detention, we are guided by the following:

To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all

- 6 -

the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officers' request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

Commonwealth v. Collins, 950 A.2d 1041, 1046-1047 (Pa. Super. 2008) (citation omitted).

Here, the court found the following:

The interaction between the police officers and Mr. Withrow began as a mere encounter. The officers responded to a police dispatch advising them that three males were "passed out" in a running vehicle in the CoGo's parking lot at 3:55 a.m. The officers responded to the scene and initially began to conduct a welfare check to determine whether the occupants of the vehicle were in any physical distress. The officers repeatedly attempted to wake the occupants by knocking on the windows of the vehicle but the occupants would not wake up. In an effort to erase any risk of physical harm that could result if one of the occupants accidentally shifted the vehicle into gear, Officer Coll opened the car door and turned off the ignition. The officers had [a] duty to check on the safety of the occupants of the Ford Escort[.] See Commonwealth v. Conte, 2007 PA Super 232, 931 A.2d 690, 693-694 (Pa. Super. 2007)("Indeed, our expectation as a society is that a police officer's duty to serve and protect the community he or she patrols extends beyond enforcement of the Crimes Code or Motor Vehicle Code and includes helping citizens...."). The police officers were well within their province to approach the vehicle, attempt to make contact with the occupants and attempt to diffuse any dangerous situation[s] that affected the safety of the occupants or the public. There was nothing unlawful about the officers approaching the vehicle and turning the ignition off.

Soon after the ignition was turned off, both Mr. Livingston and Mr. Withrow woke up. The officers obtained the identity of both men and Officer Roche returned to his vehicle to conduct a background check of the men. While Officer Roche was running the background check, both men began to make furtive

movements toward the center console of the vehicle. After Mr. Livingston ignored Officer Coll's demand to show his hands and stop moving around the interior of the vehicle, Officer Coll removed Mr. Livingston from the vehicle and had him sit on the sidewalk. Mr. Withrow was determined to have been driving with a suspended driver's license. He refused to voluntarily exit the vehicle and was then forcibly removed from the vehicle. As he was being removed from the vehicle, Mr. Withrow continued to make movements toward the center console. He was placed into custody at that point. The actions of each defendant warranted the police officers fearing for their safety and/or a belief that the defendants were attempting to conceal contraband in the console. The unusual furtive actions of Mr. Livingston and Mr. Withrow, combined with their refusal to submit to the officers' requests, created sufficient reasonable suspicion to permit the police officers to conduct an investigatory detention.

Once all of the other occupants were removed from the vehicle, Officer Coll determined he was going to conduct an inventory search. However, prior to the inventory search and right after Mr. Livingston and Mr. Withrow were removed from the vehicle, Officer Coll observed, in plain view, the firearm resting on the top of the console. Mr. Withrow does not challenge the fact that Officer Coll observed the weapon in plain view.

Trial Court Opinion, 1/19/2017, at 7-8.

We agree with the trial court's well-reasoned analysis. The interaction between the officers and the co-defendants began as a mere encounter. Officers Coll and Roche were dispatched to the convenience store for a welfare check on several individuals who all appeared to be passed out in a vehicle with the engine running. N.T., 5/2/2016, at 7-9. The officers did not turn their lights and sirens on at that time. Id. at 8. The officers tried numerous times to wake up Withrow and his passengers. Id. at 10, 12. Out of concern for the position of the car in relation to the business, and the safety of its occupants, the officers were justified in checking on the welfare of the

- 8 -

occupants and reaching in to turn off the engine. See Commonwealth v. Collins, 950 A.2d 1041 (Pa. Super. 2008) (concluded officer was permitted to check on the welfare of occupants of a legally parked car at night even with no outward signs of distress and he did not observe anything that led him to believe that something illegal was going on at that point in time).

Additionally, at that point, the officers did not search for or seize anything. After the officers were finally able to wake the individuals, they obtained Withrow's name and date of birth as well as the same information from the front seat passenger and co-defendant, Livingston. N.T., 5/2/2016, at 12. Again, one can reasonably infer that nothing intrusive was occurring regarding the officer's interaction with the individuals.

While Officer Roche went to run their information, Officer Coll observed both Withrow and Livingston make furtive movements towards the center console of the vehicle. Id. at 13. He ordered them both to show their hands and neither defendant complied. Id. at 13-14. Officer Coll then decided to remove Livingston from the car but Withrow was permitted to remain in the car. It was not until after the officers learned that Withrow's driver license had been suspended, and he continued to reach toward the center console did Officer Roche remove him from the car and conducted a pat-down search for the officers' safety. Id. at 14-15.[6] Nevertheless, it was at this point that the

_____

[6] Withrow also gave the officer consent to search his person. See N.T., 5/2/2016, at 15-16.

officers were justified in detaining and arresting Withrow as they learned he was driving with a suspended license, a violation of the Motor Vehicle Code. See 75 Pa.C.S. § 1501(a) (drivers required to be licensed). Additionally, Withrow kept making furtive movements after he had been told to stop and show his hands. The subsequent pat-down search of his person was well within the officers' permitted conduct as it was out concern for their own safety. See Commonwealth v. Rodriguez, 614 A.2d 1378, 1383-1384 (Pa. 1992) ("Even if probable cause to arrest is absent, the police officer may still legitimately seize a person, and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous."). Accordingly, the trial court did not err in denying Withrow's motion to suppress as the officers' actions were justified. Therefore, his first argument fails.

In his second issue, Withrow argues there was insufficient evidence to support his firearms conviction because he was merely present in a vehicle in which a gun was recovered. Withrow's Brief at 15. Specifically, he states:

> While a firearm was found in the vehicle, that firearm was not in Mr. Withrow's possession. The firearm was not registered to Mr. Withrow, nor was he observed attempting to control or hide the firearm by either of the two officers present. While Mr. Withrow

had made "movements" toward the center console, those observations are insufficient as a matter of law … to sustain a conviction under 18 Pa.C.S. [§] 6105(a)(1).

Withrow's Brief at 16.

We begin with our well-settled standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for   the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Melvin, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

The crime of persons not to possess firearms is defined as follows:

A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).

When a prohibited item is not discovered on a defendant's person, or in his actual possession, as is the case here, the Commonwealth may prove the defendant had constructive possession of the item.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> Commonwealth v. Brown, 48 A.3d 426, 430 (Pa. Super.2012), appeal denied, [] 63 A.3d 1243 (2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. Commonwealth v. Sanes, 955 A.2d 369, 373 (Pa. Super. 2008), appeal denied, 601 Pa. 696, 972 A.2d 521 (2009).

Commonwealth v. Hopkins, 67 A.3d 817, 820-821 (Pa. Super. 2013), appeal denied, 78 A.3d 1090 (Pa. 2013). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." Commonwealth v. Harvard, 64 A.3d 690, 699 (Pa. Super. 2013) (citation omitted), appeal denied, 77 A.3d 636 (Pa. 2013).

The trial court analyzed the claim as follows:

> In this case, the Commonwealth proved beyond a reasonable doubt that [Withrow] possessed the firearm in question. Both men were in a deep sleep when the officers approached the Ford Escort. As soon as they were awakened by the officers, both men ignored the warnings of the police officers and made repeated furtive movements toward the center console

of the Ford Escort. Mr. Livingston specifically ignored demands that he show his hands and not make any movements inside the vehicle. Despite these demands, he reached toward the center console. Mr. Withrow continued to reach toward the center console as he was being removed from the vehicle. The firearm was recovered within inches of where both men were sitting in the vehicle. Both men had the power and ability to control the firearm. Their repeated movements toward the location where the firearm was found proves their intent to maintain control over the firearm.

Trial Court Opinion, 1/19/2017, at 11.

We agree with the court's well-reasoned analysis. Furthermore, "the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Commonwealth v. Hughes, 908 A.2d 924, 928 (Pa. Super. 2006).

Here, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to sustain the trial court's finding that Withrow constructively possessed the weapon. After being awoken by police, both men were observed making repeated furtive movements towards the center console area. See N.T., 5/2/2016, at 13. Withrow made additional movements toward the area at issue even after Livingston had been removed from car. Id. at 15. Moreover, the gun, which was in plain view, was located on top of the center console that was between the driver's and front passenger's seats, where both Withrow and Livingston were sitting. See N.T., 5/2/2016, at 17. As such, the trial court, sitting as the fact-finder, could

reasonably infer the firearm was well within Withrow's reach and he had the power and intent to control the gun.[7] See Hopkins, supra. Furthermore, "it is possible for two people to have joint constructive possession of an item of contraband." Commonwealth v. Kinard, 95 A.3d 279, 292 (Pa. Super. 2014). Accordingly, we conclude there was sufficient evidence to enable the trial court to find Withrow constructively possessed a firearm. Therefore, Withrow is not entitled to relief with respect to his sufficiency challenge regarding the firearms conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2017

---

[7] See Commonwealth v. Flythe, 417 A.2d 633, 634 (Pa. Super. 1979) ("It strains the imagination to believe that defendant innocently entered this vehicle having no knowledge of the items found therein when, the pistol at least, was within a few inches of him and a portion of it was in plain view.").