J-S55005-16

2016 PA Super 199

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTHONY BALDWIN | |
| Appellant | No. 3374 EDA 2014 |

Appeal from the Order Dated May 8, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0039618-2013

BEFORE:  LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, J.:                    **FILED SEPTEMBER 01, 2016**

Anthony Baldwin appeals from the order of the Court of Common Pleas of Philadelphia County, which denied his petition for writ of certiorari of the denial of his motion to suppress and the judgment of sentence entered by the Municipal Court of Philadelphia.  After careful review, we affirm.

The underlying facts are not in dispute.  On October 11, 2013, at approximately 7:00 p.m., Philadelphia Police Officers Colin Goshert and Jeffrey Thompson were on routine patrol near East Ashmead and Wakefield Streets when Officer Goshert saw Baldwin, who was in a parking lot, pass behind a van.  The officer believed that Baldwin might have discarded something behind the vehicle.  This raised concerns because the police

_____

[*] Former Justice specially assigned to the Superior Court.

consider 200 East Ashmead Street to be a problem area based on a high number of reports of drug and gun crimes.

The officers pulled their marked patrol car into the lot without use of lights or sirens, and did not block Baldwin's path. After searching the area behind the van, and not observing any contraband, Officer Goshert approached Baldwin and requested his identification. Baldwin voluntarily provided his identification, which Officer Goshert ran through the National Criminal Information Center ("NCIC") and the Pennsylvania Criminal Intelligence Center ("PaCIC"). Baldwin had open traffic-related warrants out for his arrest; the officers took him into custody. During the course of a search incident to arrest, police found two clear jars of marijuana and twenty-five and one-half Xanax pills on his person.

On December 18, 2013, Baldwin litigated a motion to suppress in Municipal Court arguing that his stop was unsupported by reasonable suspicion. The court denied the motion, and the matter proceeded to a stipulated trial, at the conclusion of which the court found Baldwin guilty of possession of a controlled substance (Xanax)[1] and possession of a small amount of marijuana.[2]

---

[1] 35 P.S. § 780-113(a)(16).

[2] 35 P.S. § 780-113(a)(31).

The court sentenced Baldwin to six months' reporting probation for possession of a controlled substance. No further penalty was imposed for the marijuana conviction. On January 24, 2014, Baldwin filed a petition for a writ of certiorari asserting that the Municipal Court erred by denying his motion to suppress. The Court of Common Pleas held argument on May 8, 2014, at the conclusion of which it denied the writ.

This timely appeal followed in which Baldwin raises the following issue for our review:

> Did not the lower court err by denying Baldwin's petition for writ of certiorari, thereby, affirming the denial of the motion to suppress physical evidence in this matter where the police did not have reasonable suspicion to stop Baldwin after seeing him do nothing more than walk behind a van parked on a public street in Philadelphia?

Appellant's Brief, at 3.

Our standard of review when assessing a challenge to the denial of a motion to suppress is well-established. Review is limited to whether the record supports the suppression court's factual findings and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). Where the record supports the factual findings of the suppression court, we are bound by those findings and reverse only if the court's legal conclusions are erroneous. *Id.* When the appeal of the determination of the suppression court turns on allegations of legal error, the legal conclusions of the suppression court are not binding on

the appellate court, which must determine if the law was properly applied to the facts. *Id.*

An interaction between police officers and a citizen can be classified using three categories to measure the degree of intrusion on a case-by-case basis.

> Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or 'custodial detention" must be supported by probable cause.

*Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa. Super. 2008) (citations omitted).

When a police officer temporarily detains an individual by means of physical force or a show of authority, an investigative detention has occurred. *Commonwealth v. Lewis*, 723 A.2d 619, 623 (Pa. 1994). An investigative detention constitutes a seizure of a person and activates the protections of the Fourth Amendment and the requirements of *Terry v. Ohio*, 392 U.S. 1, 5 (1968). *Lewis, supra* at 622-23. To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved.

> To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

*Collins*, *supra* at 1046-47 (citation omitted.)

In *Collins*, a state trooper was traveling down a road when he saw a car parked at an overlook. Concerned for the safety of the driver and passenger, he pulled to the right of the vehicle with his headlights shining into the passenger compartment. The trooper did not block the vehicle from leaving. While the trooper was speaking to the driver and passenger, the passenger, Collins, blurted out that they had been smoking marijuana. The trooper then noticed a bong between the seats and the smell of marijuana. The trooper seized the bong and obtained consent to search the vehicle.

Collins was charged with possession of drug paraphernalia. The trial court granted his motion to suppress, after which the Commonwealth filed an appeal pursuant to Pa.R.A.P. 311(d). On appeal, this court reversed, holding that the interaction began as an act of official assistance rather than an investigative detention. It was only after Collins blurted out that he was smoking marijuana that the encounter rose to an investigative detention supported by reasonable suspicion.

In *Commonwealth v. Au*, 42 A.3d 1002, 1003 (Pa. 2012), an officer approached a vehicle stopped in the parking lot of a closed business in the

early morning hours. Finding six occupants in the vehicle he asked if everyone was 18 years old, and when he found out they were not, he asked for identification. When the front seat passenger took his identification out of the glove box, two packets of marijuana fell out. The officer then opened the driver's door and asked for his identification. At that time, he saw drugs on that side of the vehicle. Both the driver and front seat passenger were arrested.

Our Supreme Court in **Au** determined that the request for identification did not raise the level of the encounter to an investigative detention. "Under Fourth Amendment law as reflected in the decisions of the United States Supreme Court, a request for identification is not to be regarded as escalatory in terms of the coercive aspects of a police-citizen encounter." **Au, supra** at 1007. The officer's cruiser did not block the defendant's vehicle from leaving the parking lot, and the officer did not use lights or sirens. In the absence of escalating factors, the approach of the vehicle was a mere encounter, which did not rise to the level of an investigative detention prior to the discovery of illicit drugs. **Id.**

In **Commonwealth v. Lyles**, 97 A.3d 298, 300 (Pa. 2014), two officers in a marked car approached two men sitting on the steps of a vacant building. Police asked the men why they were loitering, and requested their identification. While an officer copied Lyles' information, Lyles put his hand in his pocket on several occasions despite the officer's warning to stop doing so. Concerned that Lyles might be reaching for a concealed weapon, the

officer frisked him. Lyles continued to place his hand in his pocket, and the officer forcibly removed it, at which time packets filled with cocaine became visible. Lyles was arrested and filed a motion to suppress, which the trial court granted. Our Court reversed the trial court, and on further appeal, the Supreme Court affirmed our decision. *Lyles*, like *Collins* and *Au*, confirmed that the mere request for identification does not in itself create an investigatory detention. It is only where the request for identification is coupled with a restraint of liberty, physical force or show of authority that a detention occurs. *Lyles*, *supra* at 306.

In the instant matter, Baldwin was in a parking lot when Officers Goshert and Thompson observed him. Baldwin passed behind a van and the officers lost sight of him. Believing that Baldwin may have discarded something, the officers pulled their marked patrol car into the parking lot, but did not block Baldwin's path. After searching the area behind the van, Officer Goshert approached Baldwin and asked to see his identification. Baldwin argues that by taking his identification, Officer Goshert detained him. The relevant case law does not support this assertion.

When the officers entered the parking lot, as in *Au* and *Collins*, they did so without activating sirens or lights. The officers did not block the path out of the parking lot. Unlike *Au* and *Collins*, the officers went first to the area behind the van; they did not immediately approach Baldwin. Only after searching the area did police approach Baldwin and ask for his identification.

The totality of the circumstances test requires that for an investigatory detention to exist, there must be "physical force or a show of authority" to activate Fourth Amendment protections. *Lewis*, at 619. In *Au, Collins* and *Lyles*, the absence of a show of force or authority was critical. As in those cases, the manner in which police approached Baldwin lacked the coercive elements of an investigatory stop. Therefore, the request for identification was a mere encounter.

The Court of Common Pleas properly concluded that the Municipal Court did not err in denying Baldwin's motion to suppress. Accordingly, the denial of the writ of certiorari is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2016