J-S13036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JAMES FALLIGAN | |
| Appellant | No. 475 EDA 2016 |

Appeal from the Judgment of Sentence December 12, 2013
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s):CP-51-CR-0005376-2012

BEFORE: BENDER, P.J.E.,  LAZARUS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                          **FILED JUNE 07, 2017**

Appellant, James Falligan, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas. Appellant claims he was entitled to the suppression of a firearm he was seen discarding because he abandoned the firearm during an unlawful police pursuit. We affirm.

The trial court summarized the factual background to this appeal as follows:

> On March 7, 2012 at approximately 10:40 p.m., while on tactical response on routine patrol in a high crime area, Officer [Anthony] Comitilo and his partner Officer [Alfred] Glacken responded to a gun robbery at a laundromat in the 200 Block of Grange Street in Philadelphia. Officer Comitilo had been assigned to this area for ten years and testified that he responded to gun crimes "four or five times a week in that general area." Through radio, the

---

[*] Former Justice specially assigned to the Superior Court.

officers received information that the offender was "a black male wearing all black [with a] black hoodie." The officers were traveling east on Grange Street and surveying the area for offenders when they saw [Appellant]. [Appellant] was traveling north on Howard Street crossing Grange Street in front of the officers. [Appellant] was within one block of the robbery. Officer Comitilo first saw [Appellant] at a distance of "about one-hundred feet." Officer Comitilo testified that Defendant "matched the description to a 'T'." In a marked SUV and in full uniform the officers accelerated to catch up to [Appellant] to get a better look at him. The officers were traveling at a speed of ten miles per hour and accelerated to thirty miles per hour. The speed limit on Grange Street was 25 miles per hour. The officers did not activate their light and sirens at any time. When the officers were forty to fifty feet away, [Appellant] began to walk faster and then ran. [Appellant] turned into an alleyway and the officers briefly lost sight of him. After the officers turned into the alleyway, Officer Comitilo saw [Appellant] enter a "recessed alleyway in the back yards of residential homes."[ ] At this point, Officer Comitilo saw a gun in [Appellant's] hand. [Appellant] threw the gun behind a door lying in the alleyway. The officers used their spotlight on [Appellant], who pulled out his cell phone and walked back to the officers. [Appellant] said to the officers: ". . . it's just my phone, it's just my phone." Officer Comitilo testified that Officer Glacken recovered the gun from behind the door. The gun recovered was a Taurus handgun with the serial number NWD54843.

Trial Ct. Op., 6/13/16, at 1-3 (footnote omitted).

Appellant was charged with violations of the Uniform Firearms Act. Appellant filed an omnibus pretrial motion on June 21, 2012, seeking, *inter alia*, the suppression of the firearm. The trial court convened a suppression hearing on August 23, 2013, at which Officer Comitilo testified. The court initially ordered that the firearm be suppressed, but vacated that order after the Commonwealth filed a motion for reconsideration. Following a hearing

on the Commonwealth's motion, the court denied Appellant's motion to suppress on August 23, 2013.

The trial court set forth the subsequent procedural history as follows:

On October 24, 2013, [Appellant] was found guilty of all charges. On December 12, 2013, the [c]ourt sentenced [Appellant] to two and one half to five years [of imprisonment] on Possession of a Firearm under 18 [Pa.C.S.] § 6105(a)(1), a felony of the second degree, three years reporting probation on Firearms Not to be Carried Without a License, under 18 [Pa.C.S.] § 6106(a)(1), a felony of the third degree, and no further penalty on Carrying Firearms on the Public Streets of Philadelphia under 18 [Pa.C.S.] § 6108, a misdemeanor of the first degree.

On May 28, 2014, [Appellant] filed a Petition under the Post-Conviction Relief Act[, 42 Pa.C.S. §§ 9541-9546]. On February 8, 2016, after an evidentiary hearing, the [c]ourt reinstated [Appellant's] direct appeal rights. On February 9, 2016, [Appellant] filed a Notice of Appeal. On February 29, 2016, [Appellant] filed a Statement of Errors Complained of on Appeal . . . .

*Id.* at 1-2.

Appellant presents the following question for review:

Did the trial court err when it denied [Appellant's] pre-trial motion to suppress physical evidence allegedly abandoned by [Appellant] after [Appellant] was seized by police as the arresting officers did not have reasonable suspicion to stop, detain or search [Appellant] at the time that that officers began pursuing [Appellant]?

Appellant's Brief at 5. Appellant contends that the officers seized him when they accelerated toward him in a marked police vehicle. Further, Appellant argues that he was seized without reasonable suspicion. Appellant thus claims that he was entitled to suppression of the firearm because his

abandonment of the firearm was coerced by an illegal seizure. No relief is due.

The principles governing our review are as follows:

> Our standard of review when assessing a challenge to the denial of a motion to suppress is well-established. Review is limited to whether the record supports the suppression court's factual findings and whether the legal conclusions drawn from those facts are correct. Where the record supports the factual findings of the suppression court, we are bound by those findings and reverse only if the court's legal conclusions are erroneous. When the appeal of the determination of the suppression court turns on allegations of legal error, the legal conclusions of the suppression court are not binding on the appellate court, which must determine if the law was properly applied to the facts.

> An interaction between police officers and a citizen can be classified using three categories to measure the degree of intrusion on a case-by-case basis.

>> Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

> When a police officer temporarily detains an individual by means of physical force or a show of authority, an investigative detention has occurred. An investigative detention constitutes a seizure of a person and activates the protections of the Fourth Amendment and the

requirements of **Terry v. Ohio**, 392 U.S. 1, 5 [ ] (1968). To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved.

> To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

**Commonwealth v. Baldwin**, 147 A.3d 1200, 1202-03 (Pa. Super. 2016)

(some citations omitted).

Moreover,

> due to heightened privacy considerations in Pennsylvania, a police officer's pursuit of a person fleeing the officer was a seizure for purposes of Article 1, Section 8 of the Pennsylvania Constitution. Thus, under [**Commonwealth v. Matos**, 672 A.2d 769, 771 (Pa. 1996)], any contraband discarded during the pursuit was abandoned by coercion and "the officer must demonstrate either probable cause to make the seizure or reasonable suspicion to stop and frisk."

**Commonwealth v. Cook**, 735 A.2d 673, 675 (Pa. 1999) (some citations omitted).

Following our review, we agree with the trial court that Appellant was not seized by the officers when they approached him. Officer Comitilo was traveling east on Grange Street, when he observed Appellant walking north

on Howard Street, crossing Grange Street. Officer Comitilo accelerated his marked police SUV and closed the distance to Appellant from one hundred feet to forty feet. The officer then turned onto Howard Street and observed Appellant turn west into an alleyway. The officer turned his vehicle into the alleyway, at which time Appellant was approximately forty feet in front of the officer and had a gun in his hand. Appellant then ducked behind a door and reemerged carrying his cellphone. Throughout this interaction, however, the officers did not activate their emergency lights, engage the siren, honk the horn, or call out to Appellant. Although we appreciate that being followed by a police vehicle may be unnerving to a reasonable person, we discern no merit to Appellant's initial contention that he was seized when the officer accelerated toward him and began to follow him. *See Baldwin*, 147 A.3d at 1202-03. Because we conclude that the interaction was a mere encounter, we need not determine whether there was reasonable suspicion supporting the officer's decision to follow Appellant into the alleyway. *See id.*

Judgment of sentence affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2017

- 6 -