J-S27006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIOUL DEVAUGHN | : | |
| | : | |
| Appellant | : | No. 1752 EDA 2017 |

Appeal from the Judgment of Sentence September 9, 2009
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0014555-2008

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 25, 2018**

Dioul DeVaughn ("Appellant") appeals *nunc pro tunc* from the judgment of sentence imposed on September 9, 2009, following a nonjury trial. Appellant argues that the trial court erred in denying his pretrial motion to suppress evidence.  We affirm.

Appellant was arrested on January 4, 2008, and charged with violating the Uniform Firearms Act ("UFA"), 18 Pa.C.S. §§ 6101–6127, and receiving stolen property, 18 Pa.C.S. § 3925(a).  On March 24, 2009, Appellant's counsel litigated a motion to suppress evidence related to Appellant's arrest, including a gun that Appellant discarded while fleeing from Philadelphia Police Officers Sean McGinnis and Rosa.[1]  After a hearing, the trial court denied

---

[1]  Officer Rosa's fist name is not of record.

Appellant's motion to suppress.  N.T., 3/24/09, at 38.  Immediately, Appellant waived his right to a jury trial and proceeded to a bench trial.  *Id.*  The trial court found Appellant guilty of violating UFA Section 6106(a)(1), firearms not to be carried without a license, and UFA Section 6108, carrying firearms on public streets or public property in Philadelphia, but not guilty of receiving stolen property.  *Id.* at 47.  The trial court sentenced Appellant on September 9, 2009, to incarceration for an aggregate term of two to four years, followed by three years of probation.  N.T., 9/9/09, at 12.

Appellant did not file a direct appeal.  However, through the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546, he successfully litigated the reinstatement of his direct appeal rights.  Order, 5/23/17.  He filed a timely notice of appeal on June 1, 2017.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Although Appellant raised seven issues in his Rule 1925(b) statement of errors complained of on appeal, he presents one issue on appeal:

1. Did the trial court err in denying the suppression motion of [Appellant] because the seizure of the evidence was not the result of a mere encounter with the police, but a violation of [Appellant's] State and Federal Constitutional rights to [be] free of unreasonable searches and seizures?

Appellant's Brief at 2.[2]

---

[2]  Because Appellant has not presented the other six issues in his appellate brief, we consider them abandoned and will not address them.  Pa.R.A.P. 2116(a).

Our standard of review for the denial of a suppression motion is well established:

> [The] standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record ... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if legal conclusions drawn therefrom are in error.

*Commonwealth v. Bush*, 166 A.3d 1278, 1282 (Pa. Super. 2017). Our scope of review in suppression matters is limited to the suppression hearing record and excludes any evidence elicited at trial. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

The trial court summarized the evidence adduced during the suppression hearing as follows:

> On December 18, 2007, at approximately 1:20 a.m., Appellant was standing on the steps of a house in the 3100 block of Sheridan Street in Philadelphia, when Philadelphia Police Department Officers McGinnis and Rosa pulled onto the block in their patrol vehicle; Officer Rosa "immediately recognized Appellant as someone that I knew due to prior police contact." N.T. 3/24/09 at 6–8. Officer Rosa asked Appellant his name, to which appellant replied "Dioul Devaughn." Id. at 8–9. Intending to engage in further discussion and investigation, Officer Rosa opened his car door to get out of the vehicle, causing Appellant to "immediately . . . run southbound on Sheridan Street towards an alley." Id. at 9. The officers pursued Appellant through the alley, witnessing him discard a silver-colored handgun mid-flight. Id. at 9, 28–2[9]. Officer McGinnis recovered the gun and "placed it on a property receipt"; it was later identified as a 9mm handgun, loaded with 13 rounds in the clip and one in the chamber, which was engraved

- 3 -

with the name "Atlanta Police Department" and had previously been reported as stolen.  N.T. 3/24/09 at 9–10, 32, 34.

Trial Court Opinion, 9/7/17, at 1–2.

On appeal, Appellant argues:

There was no evidence in this case that [Appellant] had committed any crime, he was just standing on a step.. . .  He had the right to leave the step and run to the alley and since the police did not have probable cause to arrest [Appellant], the police actions in entering [the] alley and forcing [Appellant] to abandon the alleged weapon was illegal.  The trial court should have suppressed the evidence.

Appellant's Brief at 7, 8.  In support of his argument, Appellant relies on the concept of forced abandonment as addressed in **Commonwealth v. Matos**, 672 A.2d 769 (Pa. 1996).   Therefore, the Supreme Court of Pennsylvania reviewed three consolidated cases involving police pursuit to determine whether the pursuit was a seizure.[3]  The **Matos** Court explained, "If it was not

_____

[3]  The relevant facts of each case were as follows:

In [**Matos v. Commonwealth**], on April 8, 1991, two Philadelphia police officers responded to a radio broadcast that unknown persons were selling narcotics in the vicinity of Reese Street. They approached a group of three men in a nearby playground who fled as the officers approached. During the ensuing chase, one of the officers saw Appellant Matos discard a plastic bag. The officer retrieved the bag. Matos was then apprehended and the bag was discovered to have contained 12 vials of cocaine. Five additional vials of cocaine were found in Matos pocket after he was seized by the officer. The Court of Common Pleas of Philadelphia County suppressed the introduction of the vials of cocaine at Matos' trial on drug charges, but the Superior Court reversed.

a seizure then the contraband was abandoned property, lawfully found by the officer. However, if the pursuit was a seizure, then the abandonment was coerced, and the officer must demonstrate either probable cause to make the seizure or a reasonable suspicion to stop and frisk." ***Id.*** at 771.

_____

[In ***McFadden v. Commonwealth***, o]n October 27, 1990, two Philadelphia police officers in full uniform and in a marked patrol car approached ... McFadden, who looked in their direction and promptly ran away. One of the officers chased him for a short distance and, before being caught, McFadden tossed a handgun into the bushes. He was subsequently arrested after the gun was recovered and charged with carrying an unlicensed firearm on a public street. The Court of Common Pleas of Philadelphia County suppressed the evidence of the handgun at trial, but the Superior Court reversed.

[In ***Carroll v. Commonwealth***, o]n November 22, 1989, two uniformed Philadelphia police officers in a marked police vehicle saw two men standing on the sidewalk of Olive Street. Both officers exited their patrol car and one of the officers spoke to one of the two men. The second man, … Carroll, stood with his hands in his jacket pockets. The other officer, with his hand over his gun, approached Carroll and started to ask him to take his hands out of his pockets. Carroll turned and fled into an alley, where he promptly slipped and fell on some debris. As he fell, he was being followed by one of the officers, who saw two broken tinted heat sealed packets containing a white substance fall from Carroll's pocket onto the debris in the alley. The pursuing officer approached Carroll, who was still face down in the debris, drew his gun, and told Carroll to stay on the ground with his hands behind his back. Carroll was then arrested. The officer searched Carroll's coat pockets and found 45 additional brown tinted packets. At his trial for possession of drugs and possession of drugs with intent to deliver, the Court of Common Pleas of Philadelphia suppressed the evidence of the drugs, but the Superior Court reversed.

***Matos***, 672 A.2d 770–771 (headings omitted).

- 5 -

In each of the three cases, the **Matos** Court observed that the police officers approached the defendant without reasonable suspicion or probable cause, the defendant fled, and the police pursued. During the pursuit, the defendant abandoned property. **Matos**, 672 A.2d at 770–771. Finding the police action to be coercive, the **Matos** Court held that each of the three pursuits constituted a seizure under the Pennsylvania Constitution, and therefore, "the discarded contraband must be suppressed." **Id.** at 770.

In contrast to **Matos**, the trial court herein made the following findings of fact and conclusions of law from the bench:

> Well, I consider this to be a situation of unprovoked flight. So the law is clear that unprovoked flight in a high crime area is reasonable suspicion to stop.
>
> On 12-18-07 at 1:20 in the morning, in a high crime area where the officer made hundreds of narcotics and gun arrests … .
>
> He knows this to be a high crime and high violence area by the number of narcotics and gun arrests he's made over the past seven years in this district.
>
> [Officer Rosa] had some prior contact with [Appellant]. He asked him his name from his [patrol] car door. He opened his door and he didn't have to say anything or get any further when [Appellant] immediately began to run. I'm finding that's unprovoked flight in a high crime area and that there is not – this is not forced abandonment.
>
> So I'm going to deny the motion.

N.T., 3/24/09, at 37–38. The trial court amplified its reasoning in the Pa.R.A.P. 1925(a) opinion:

> As established through Officer Rosa's [suppression] testimony, [his] and his partner's initial interactions with Appellant

amounted to nothing more than a mere encounter. The officers simply happened upon Appellant, asked him his name, and then began to exit their patrol vehicle; there is nothing about these acts that evinces an intent to detain Appellant in any manner, or that would make a reasonable person, standing in Appellant's shoes, believe that he was not free to disregard the officers' entreaties or calmly depart of his own volition. Despite this, however, Appellant chose to flee the scene; as he did so in what Officer Rosa made clear at [the suppression hearing] is a high-crime neighborhood, *see* N.T. 3/24/09 at 6–7, this unprovoked flight established a reasonable suspicion that illicit activity was afoot, thereby providing the officers with a constitutionally permissible basis for chasing after and seeking to detain Appellant, so as to further investigate the situation. This reasonable suspicion was only reinforced when both officers witnessed Appellant discard a firearm while attempting to elude them, and was certainly transformed into probable cause supporting Appellant's arrest when the officers recovered the weapon, and discovered that it appeared to be the Atlanta Police Department's rightful property. Thus, there was nothing constitutionally suspect about the officers' interactions with Appellant, from initial contact in the 3100 block of Sheridan Street through the alleyway . . . minutes later, nor was there any basis for granting Appellant's Motion to Suppress.

Trial Court Opinion, 9/7/17, at 5–6 (footnote omitted).

Appellant contends that this police interaction was not a mere encounter: "[Appellant] was not free to leave because when he ran away the police pursued him and the police officer was exiting his car in order to stop [Appellant] and interrogate him, which is what the police officer testified to at the suppression hearing[.]" Appellant's Brief at 7. Also, Appellant complains that the trial court incorrectly referred to the area of Appellant's arrest as a "high crime" area. ***Id.***

It is well established that there are three categories of encounters between citizens and the police:

(1) A mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. Second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa. Super. 2016) (citation omitted). In order to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch" that a defendant committed a crime. *Commonwealth v. Williams*, 125 A.3d 425, 432 (Pa. Super. 2015) (citation omitted). In making this determination, we consider the totality of the circumstances. *Id.*

The record supports the trial court's findings, and its suppression ruling is without error. The police interaction with Appellant began as an encounter, similar to the three interactions reviewed in *Matos*. Unlike the cases in *Matos*, however, the police pursuit of Appellant constituted a seizure supported by reasonable suspicion.

The facts of record establishing that the initial police interaction was a mere encounter include the following: While driving in their patrol car, the police officers happened upon Appellant standing on the step of a house. N.T., 3/24/09, at 7–8. Recognizing Appellant from a prior police contact, the officers pulled up to the curb, and Officer Rosa asked Appellant for his name. *Id.* at 8. Such a request for information need not be supported by any level

- 8 -

of suspicion and carries no official compulsion to stop or to respond. *Baldwin*, 147 A.3d at 1202. Officer Rosa did not ask any more questions or instruct Appellant to stop and wait. N.T., 3/24/09, at 8. Therefore, no investigative detention occurred. *Baldwin*, 147 A.3d at 1202.

Viewing the totality of the circumstances, the facts of record establishing reasonable suspicion to support the pursuit of Appellant include the following: Officer Rosa was a seven-year veteran officer. N.T., 3/24/09, at 6. While driving in their patrol car, the police officers happened upon Appellant standing on the step of a house at 1:20 in the morning. *Id.* at 6–8. Although Officer Rosa did not testify that this incident occurred in a high crime area, he did state that he had made almost a hundred arrests in the "general area of the 3100 block of North Sheridan Street" for "narcotics and guns." *Id.* at 7, 11–12. As the factfinder, the trial court drew a reasonable inference that the area supported criminal activity. *Id.* at 37–38. As Officer Rosa alighted from his vehicle, Appellant fled. *Id.* at 9. These factors—the time of day, Officer Rosa's recognition of Appellant, and the criminal nature of the area—distinguish this case from the facts recited by the *Matos* Court.

Based on the record before us, we conclude the police officers had reasonable suspicion that Appellant was criminally engaged when they began their pursuit. While fleeing lawful police pursuit, Appellant discarded a silver handgun in the alley. This created probable cause to arrest him. *See Commonwealth v. Taggart*, 997 A.2d 1189, 1196-1197 (Pa. Super. 2010)

("[A]n officer's observation of an individual carrying a handgun on public streets in the city of Philadelphia gives rise to probable cause for arrest under [18 Pa.C.S.A.] § 6108"). Once Appellant abandoned his gun, "the police were free to retrieve it and use it for evidentiary purposes." ***Commonwealth v. Byrd***, 987 A.2d 786, 794 (Pa. Super. 2009). Accordingly, we hold that the trial court did not err in denying Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/18