J-S28042-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LAVAUGHN FOLKES, | : | |
| | : | |
| Appellant | : | No. 1174 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 18, 2018
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s):CP-22-CR-0002724-2017

BEFORE:  BOWES, J., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:  **FILED: AUGUST 19, 2019**

Lavaughn Folkes (Appellant) appeals from the June 18, 2018 judgment of sentence of three to eight years of incarceration following his nonjury convictions for persons not to possess firearms and firearms not to be carried without a license.  Specifically, Appellant challenges the denial of his pretrial suppression motion.  We affirm.

The trial court set forth the following factual and procedural history.

> On May 2, 2017, following an interaction with his assigned probation officer, [Appellant] was found in possession of a loaded firearm which was located underneath the driver's seat of a car that [Appellant] had been seen inside, sitting in the driver's seat. At the time of this discovery[, Appellant] was serving probation for the charges of [] robbery of a motor vehicle [and conspiracy-robbery of a motor vehicle,] to which he pled guilty on March 24, 2015.
>
> Following the discovery of the firearm, [Appellant] was charged with persons not to possess firearms, and firearms not to

_____

* Retired Senior Judge assigned to the Superior Court.

be carried without a license. On December 22, 2017, [Appellant] filed a motion to suppress the evidence, and on January 19, 2018[,] a suppression hearing on the matter commenced. The following evidence was adduced at the hearing.

[Probation Officer (P.O.)] Naomi Morrow of Dauphin County Adult Probation was [Appellant's] supervisor since November of 2015, and had made contact with him at least once a month since being on supervision. On May 2, 2017, [P.O.] Morrow was partnered with [the] Harrisburg Police [Department] as a member of the Street Crimes Unit, and on this day [she and P.O. Aaron Harvey were riding along in a vehicle driven by Harrisburg Police Officer Nicholas Ishman,] … doing routine probation checks and assisting [Officer] Ishman with any stops that he conducted. At about 3:00 p.m. [P.O.] Morrow, Officer Ishman, and P.O. Harvey were located at [the intersection of 14th and Vernon streets] when they saw [Appellant] walk out of the corner store and get into a vehicle parked across from such store. [P.O.] Morrow knew that [Appellant] did not have a valid driver's license, and was in violation of his probation to be driving a car without a license.[3]

_____

[3] [Appellant] also testified that he did not have a driver's license on May 2, 2017, and was aware that he was in violation of his probation to be driving without a license.

Upon observing [Appellant] exit the store and enter the driver's seat of the car,[1] [P.O.] Morrow asked Officer Ishman[,] who was driving them in an unmarked minivan, to stop, so [P.O. Morrow] could make contact with [Appellant]. At the time[, P.O.] Morrow was wearing a street crimes uniform which consisted of black cargo pants, black [] marked shirt[], and her probation/parole vest, which [said] "parole" on the front and back of the vest. [P.O.] Morrow called out to [Appellant]. [P.O.] Morrow and [P.O.] Harvey exited [the] vehicle, walked over to [Appellant,] who was sitting in the driver's seat of the vehicle, and asked him to step out. [Appellant] exited the vehicle and interacted with [P.O.] Morrow.

_____

[1] Appellant was in the car with an unidentified front seat passenger. N.T., 1/19/2018, at 15, 17.

- 2 -

[P.O.] Morrow asked [Appellant] what he was doing on that day and why he was driving. [Appellant] told [P.O.] Morrow that the car was his mother's, and he had just picked up his sister and was taking her to the store.[2] [P.O.] Morrow testified that she talked to [Appellant] for a little bit, asked him if he had anything illegal on him, and then asked him for consent to search his person. [Appellant] consented to the search and [P.O.] Morrow had [P.O.] Harvey conduct the search, which [did not yield any contraband. P.O.] Morrow then asked [Appellant] if there was anything illegal in the car, and if he minded if they search[ed] the car. [P.O.] Morrow testified that [Appellant] said "go ahead."[4] [P.O.] Morrow then asked the passenger in the front passenger seat to exit the vehicle so they could search, and asked [Appellant] and his sister to step to the back of the car. The search of the vehicle yielded a small black handgun which was located under the front driver's seat.

_____
[2] Appellant's sister was not in the car when officers arrived. N.T., 1/19/2018, at 15. Though it is not clear from the record exactly when, at some point she arrived at the vehicle while the officers were still there. *Id.* at 18.

[4] [P.O.] Harvey also testified that [Appellant] did not refuse consent, did not hesitate in giving consent, and that it was "pretty unequivocal" that [Appellant] gave consent. Additionally, [P.O.] Harvey testified that none of the other passengers raised any objections to the search, they were all very cooperative [and] very quick to answer, and that there was nothing that made it seem like they had an issue with [the officers] asking to search and [their] giving permission to do so.

Trial Court Opinion, 1/10/2019, at 1-3 (citations to record omitted; some paragraph breaks supplied).

Following the suppression hearing, the trial court denied Appellant's motion. Order, 2/21/2018. At the conclusion of a bench trial, Appellant was found guilty of both charges and sentenced to a term of three to eight years of incarceration for each conviction, to be served concurrently. Appellant

timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following question for this Court's consideration: Whether the trial court "erred in denying [Appellant's] motion to suppress when probation officers performed a warrantless search of [Appellant's] vehicle without procuring [Appellant's] unequivocal, specific, and voluntary consent?" Appellant's Brief at 8.

We consider Appellant's question mindful of the following.

> Our standard of review on appeal of the denial of a motion to suppress is to determine whether the certified record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. We consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If the record supports the factual findings of the suppression court, we reverse only if there is an error in the legal conclusions drawn from those factual findings.

***Commonwealth v. Gould***, 187 A.3d 927, 934 (Pa. Super. 2018) (citations and internal quotation marks omitted).

On appeal, Appellant concedes that probation officers can search a probationer's person and property on the basis of reasonable suspicion, but he argues that the consent he gave to search was not voluntary. Appellant's Brief at 12, 16-20.

Because Appellant's claim challenges the probation officer's ability to conduct a search of the vehicle, we observe the following. Probationers have limited Fourth Amendment rights because of a diminished expectation of

privacy. ***Commonwealth v. Parker***, 152 A.3d 309, 316 (Pa. Super. 2016) (citations and internal quotation marks omitted). Pursuant to 42 Pa.C.S. § 9912, a county probation officer may conduct a property search "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S. § 9912(d)(2). The statute specifies factors a court may take into account in determining whether reasonable suspicion exists:

> (i) The observations of officers.
>
> (ii) Information provided by others.
>
> (iii) The activities of the offender.
>
> (iv) Information provided by the offender.
>
> (v) The experience of the officers with the offender.
>
> (vi) The experience of officers in similar circumstances.
>
> (vii) The prior criminal and supervisory history of the offender.
>
> (viii) The need to verify compliance with the conditions of supervision.

42 Pa.C.S. § 9912(d)(6).[3] In addition, the statute provides that "reasonable suspicion to search shall be determined in accordance with constitutional

---

[3] The statute also requires that, absent exigent circumstances, a probation officer must obtain prior approval from a supervisor to conduct a property search. 42 Pa.C.S. § 9912(d)(3). However, a violation of the statute does not constitute an independent ground for suppression of evidence. ***Id.*** § 9912(c).

search and seizure provisions as applied by judicial decision." *Id.*; *see also*

*Parker*, 152 A.3d at 318.

> In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a person of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.
>
> The threshold question in cases such as this is whether the probation officer had a reasonable suspicion of criminal activity or a violation of probation prior to the search.

*Parker*, 152 A.3d at 318 (citations, brackets, and internal quotation marks

omitted).

Here, the trial court determined P.O. Morrow had reasonable suspicion

that Appellant was in violation of his probation prior to the search of the

vehicle. Trial Court Opinion, 1/10/2019, at 5-6. Appellant does not challenge

this finding on appeal. *See* Appellant's Brief at 4 (challenging only the

voluntariness of consent in his statement of questions involved). Thus, with

reasonable suspicion, the search was permissible irrespective of Appellant's

consent.

Even if Appellant had made such a challenge, we agree with the trial

court's finding of reasonable suspicion. P.O. Morrow reasonably suspected

Appellant was driving without a license in violation of his probation; she

observed Appellant enter and sit in the driver's seat of a car that was on a

public road away from his home, and as his supervisor, she knew Appellant did not have a driver's license. N.T., 1/19/2018, at 14-16. In addition, Appellant admitted to her that he had just been driving his mother's car. ***Id.*** at 15. Thus, we agree with the trial court that the officers had reasonable suspicion that Appellant was in violation of his probation prior to the search of the vehicle. Trial Court Opinion, 1/10/2019, at 5-6; ***see also Parker***, 152 A.3d at 318. Therefore, any search of Appellant's vehicle was lawful, regardless of his consent.

However, even if the officers did not have reasonable suspicion, the officers obtained Appellant's consent prior to the search. As stated *supra*, on appeal, Appellant contends his consent was not voluntary. Appellant's Brief at 16-20.

> One of the limited exceptions to the warrant requirement is a consensual search. We have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. Although a warrantless, but consensual, search is constitutionally permissible, obtaining consent is an "investigative tool" utilized by law enforcement. It allows police to do what otherwise would be impermissible without a warrant. As a consent search is in derogation of the Fourth Amendment, there are carefully demarked limitations as to what constitutes a valid consent search.

> First, consent must be voluntarily given during a lawful police interaction. For a finding of voluntariness, the Commonwealth must establish that the consent given by the defendant is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances.

> If consent is given voluntarily, the ensuing search must be conducted within the scope of that consent. The standard for measuring the scope of an individual's consent is one of "objective reasonableness." We do not ascertain the scope of consent from the individual's subjective belief or the officer's understanding based on his or her training and experience, but based on what … the typical reasonable person would have understood by the exchange between the officer and the suspect.

*Commonwealth v. Valdivia*, 195 A.3d 855, 861–62 (Pa. 2018) (citations, footnotes, brackets, some quotation marks omitted).

Here, Appellant argues that his consent was coerced because he claims he was in custody, three officers converged on him, the officers directed his and his sister's movements, he had only been released recently from electronic monitoring, and P.O. Harvey questioned him about the amount of money found on Appellant's person. *Id.* at 19-20.

To the extent Appellant claims he was in custody, *see* Appellant's Brief at 19, we note the following. Our jurisprudence defines custody as consisting of "coercive conditions as to constitute the functional equivalent of an arrest." *Commonwealth v. Chambers*, 55 A.3d 1208, 1214 (Pa. Super. 2012) (citation and brackets omitted); *see also Commonwealth v. Miller*, 186 A.3d 448, 452 (Pa. Super. 2018) (stating that because Miller was in custody, it weighs against a finding of voluntariness).

Here, it is clear Appellant was not in custody when P.O. Morrow asked him if the officers could search the vehicle. P.O. Morrow was Appellant's supervisor. She happened upon him while patrolling the area, observed him apparently violating the terms of his probation, did not activate lights or

sirens, got out of the unmarked minivan, walked across the street, asked him to exit the vehicle, and casually asked Appellant what he was doing. The officer's minivan was parked across the street and did not block Appellant from leaving. As discussed *supra*, P.O. Morrow reasonably suspected Appellant was violating a probation condition, and there is nothing in the record to indicate that P.O. Morrow was doing anything more than requesting information, or that she gave any official compulsion to stop or respond. **See Gould**, 187 A.3d at 937 n.9 (compiling cases where no investigative detention occurred) ("**Commonwealth v. Au**, [] 42 A.3d 1002, 1008 ([Pa.] 2012) (concluding no investigative detention occurred where officer approached vehicle parked in lot, but did not activate overhead lights, position his vehicle so as to block suspect vehicle from leaving, or otherwise issue threats or commands or show force); **Commonwealth v. Baldwin**, 147 A.3d 1200, 1204 (Pa. Super. 2016) (finding no investigative detention where officers' vehicle did not block pedestrian's path out of parking lot); **Commonwealth v. Collins**, 950 A.2d 1041, 1044, 1047 (Pa. Super. 2008) (*en banc*) (finding no investigative detention where police parked 20 feet behind vehicle parked along highway, did not block vehicle from leaving, and did not activate overhead lights).").

Thus, there is no evidence that Appellant was subjected to "coercive conditions to constitute the functional equivalent of an arrest" when P.O. Morrow asked Appellant if he had anything illegal in the car and whether the

officers could search it. **See Chambers**, 55 A.3d at 1214; **see also** N.T., 1/19/2018, at 11-17.

The trial court determined that Appellant "expressly volunteered consent to search both his person and his vehicle." Trial Court Opinion, 1/10/2019, at 5. The record supports the trial court's finding. P.O. Morrow testified on direct examination as follows.

A. I asked him if there's anything illegal in the car. And he says, No. And I say, Do you mind if we search the car? And he says that – he gave us – he said go ahead.

Q. At this point, what's his demeanor? Is he –

A. Calm, cool.

N.T., 1/19/2018, at 17. P.O. Harvey confirmed P.O. Morrow's testimony that Appellant consented to the search of the vehicle. **Id.** at 33-34 (testifying that Appellant answered quickly, did not hesitate, and did not refuse when asked for consent to search the car).[4] In addition, all of the Commonwealth's witnesses testified that the interaction between P.O. Morrow and Appellant was conversational. **Id.** at 15-16, 26, 29, 44 (describing their interaction as "casual," "normal," "everyday," "cordial," "just making contact," "just talking,"

_____

[4] Appellant asserts that P.O. Harvey's testimony is inconsistent with that of P.O. Morrow. Appellant's Brief at 18-19. Some of the questions on cross-examination were worded in a confusing fashion and elicited seemingly inconsistent "yes" or "no" responses. Our review of the transcript reveals that P.O. Harvey testified clearly that Appellant consented to a search of the vehicle. N.T., 1/19/2018, at 37 (testifying on cross-examination that "[P.O. Morrow] asked if there was anything illegal in the vehicle. Pretty much the standard thing we ask. And [Appellant] replied that there was nothing illegal in the vehicle and he did consent to the search").

- 10 -

and "like you'd talk to anyone on the street"). Appellant was "completely normal" and "not nervous at all." ***Id.*** at 26. P.O. Morrow was about 10 feet away from Appellant, with P.O. Harvey behind her, and Officer Ishman was "catty-corner" on the other side of the vehicle. ***Id.*** at 30, 42. Appellant had room to move around, P.O. Morrow was "not right up in" Appellant's face, and she did not command or direct him to do anything prior to the search. ***Id.*** at 30. Further, the officers were not looking for Appellant that day, but happened upon him. ***Id.*** at 24-25. P.O. Morrow initially made contact with Appellant by calling to him from across the street while she was still inside Officer Ishman's vehicle. ***Id.*** at 14. Officer Ishman let the probation officers out to cross the street toward where Appellant was sitting in the driver's seat of a vehicle, and then Officer Ishman parked his vehicle and joined them. ***Id.*** at 14, 41-42. The officers were in an unmarked minivan, did not use any lights or sirens, parked across the street from Appellant, and did not block Appellant's car from leaving. ***Id.*** at 13, 41.

Under the totality of the circumstances, we agree with the trial court that Appellant's consent was voluntary and "the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne." ***See Valdivia***, 195 A.3d at 862; ***Commonwealth v. Luczki***, -- A.3d --, 2019 WL 2399637 (Pa. Super. June 7, 2019) (citation omitted) ("It is within the suppression court's sole province

- 11 -

as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.").

For all of the foregoing reasons and based upon our review of the record, we discern no error in the trial court's denial of Appellant's suppression motion.

Judgment of sentence affirmed.

Judge Bowes joins this memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/19/2019</u>