2024 PA Super 249

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON ORTIZ | : | |
| | : | |
| Appellant | : | No. 2608 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 6, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No:  CP-09-CR-0006363-2021

BEFORE:  STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:                    **FILED OCTOBER 29, 2024**

Appellant, Brandon Ortiz, appeals from the Judgment of Sentence entered on September 6, 2023 in the Bucks County Court of Common Pleas. Upon review, we affirm.

The suppression court set forth the relevant facts:

On the afternoon of June 9th, 2021, Officer David Clee, a highly experienced and trained police officer in the area of drug investigations and drug interdiction, received a tip from a confidential informant that a red BMW SUV with Massachusetts plate 3JDC85, would be transporting one kilogram of cocaine in the area of Emerald and Thayer Streets in Philadelphia. The confidential informant indicated that a female would be driving the vehicle. This confidential informant had proven reliable in the past. His information had led to the seizures of narcotics and multiple arrests in the past.

Officer Clee found the vehicle exactly matching the vehicle described by the confidential informant in the area where the confidential informant said the vehicle would be. Officer Clee

_____

[*] Former Justice specially assigned to the Superior Court.

checked the owner of the vehicle, found him to be [Appellant], and found him to be under investigation for cocaine trafficking in Massachusetts. The area where the vehicle was located in Philadelphia was an area of high drug activity.

Officer Clee followed the vehicle in Philadelphia. While following the vehicle, the vehicle did stop on at least one occasion, but Officer Clee did not observe any criminal activity occurring in Philadelphia, aside from, of course, the description given by the confidential informant.

Officer Clee then alerted Bensalem Township Police that the vehicle was heading north in the area of I-95 and requested that Sergeant Michael Brady of the Bensalem Township Police Department, an experienced narcotics interdiction officer, stop the vehicle in Bucks County.

Sergeant Brady observed the vehicle traveling northbound on I-95 in Bensalem Township in Bucks County, and he stopped the vehicle in the vicinity of the Street Road Exit on I-95.

At that time, the vehicle had heavily tinted windows which prevented the Sergeant from seeing the occupants of the vehicle, and that was given as a reason for the stop.

The vehicle also had a slightly tinted license plate cover on the back, however, that did not obscure in any meaningful way the lettering or numbers on the license plate itself.

Sergeant Brady approached the vehicle, the BMW SUV. [Appellant] was the passenger in the vehicle, he being the owner of the vehicle, and a female was the driver.

[Appellant] was cooperative with the police, although he did appear somewhat nervous, often avoided eye contact, and slouched back in his seat. The officer indicated that he could tell that [Appellant] had an elevated heartbeat by looking at his- the outer part of his carotid artery, and indicated that [Appellant's] hands shook at times.

Now, after receiving paperwork from the occupants of the vehicle, Sergeant Brady returned to his police vehicle for a short time. He then returned to the BMW and asked [Appellant] if he would consent to a search of his vehicle. [Appellant] refused.

Sergeant Brady then directed [Appellant] and the driver to exit the vehicle, which they did.

Corporal Robert Schwarting, an experienced K9 officer, was called to the scene to have his dog, Bowie, a trained K9, sniff the vehicle. The K9 search occurred approximately 12 minutes after the stop. Officer Schwarting took his dog to the front of the vehicle, and then proceeded counterclockwise around the vehicle to perform the search. The front doors of the vehicle were partially open at the time that the search was conducted.

The dog, who was highly trained to detect cocaine and other drugs, alerted strongly to indicate that there was a controlled substance in the vehicle. The dog remained on the outside of the vehicle during the search, although at one point he briefly placed his front paws on the bottom of the driver's side door frame, and he was immediately pulled back from that position to the outside of the car by Corporal Schwarting.

Now, after the K9 exhibited numerous signs that he detected a controlled substance, [Appellant] and the female driver were handcuffed, placed in custody, and transported to the police station. A search warrant, thereafter, was obtained for the vehicle which revealed a cloth bag within which was a clear plastic bag containing a kilogram of cocaine.

Suppression Court Opinion, 11/17/22, at 2.

On March 11, 2021, Appellant filed a motion to suppress the physical evidence due to an illegal traffic stop, canine search, and arrest. The court heard argument on November 17, 2022 and denied the motion on February 7, 2023. After a two-day waiver trial, the court found Appellant guilty of possession with intent to deliver ("PWID") a controlled substance (cocaine). On September 6, 2023, the trial court imposed a sentence of 27 to 60 months of incarceration. This instant appeal followed.

On appeal, Appellant presents three issues, which we paraphrase for clarity: (1) whether the police had reasonable suspicion in support of the

vehicle stop; (2) whether the roadside detention for the canine sniff was lawful; and (3) whether police improperly permitted the dog to invade the interior of the vehicle.  Appellant's Brief at 6.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010).  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.  ***Id.***  In reviewing an order from a suppression court, this Court may not look beyond the suppression record, and may consider the evidence for the prosecution and any uncontradicted evidence for the defense.  ***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa. Super. 2017).

In support of his first argument—that police lacked reasonable suspicion in support of the vehicle stop—Appellant cites only to a portion of ***Whren v. United States***, 517 U.S. 806, 813 (1996), wherein the United States Supreme Court explains that the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the police officer.  Appellant's Brief at 11.  Appellant claims the traffic stop in this case was a "pretext for drug interdiction." ***Id.***  But ***Whren*** actually contradicts Appellant's argument insofar as it held that a police officer's subjective motivation for a stop is not

relevant to its reasonableness under the Fourth Amendment. Indeed, the *Whren* Court cited *United States v. Robinson*, 414 U.S. 218 (1973), which held that a traffic violation arrest "would not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search.'" *Whren*, 517 U.S at 813 (quoting *Robinson*, 414 U.S. at 221).

Because *Whren* does not support Appellant's argument, and because he does not offer any other basis to support his argument that the traffic stop was invalid, Appellant's first ~~argument~~ claim fails. In any event, we observe that police had reasonable suspicion of criminal activity prior to effecting the traffic stop. The Supreme Court has stated,

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, [e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004) (internal citations and quotation marks omitted). Here, ~~P~~police observed excessive

window tint on Appellant's vehicle.[1]  That, by itself, justified a stop.  ***See***

***Commonwealth v. Postie***, 110 A.3d 1034, 1039-40 (Pa. Super. 2015).

Further, as we discuss below, police already had corroborated many of the details of a tip from a known, reliable informant before stopping Appellant's vehicle.

In his second argument, Appellant claims that the roadside detention for the canine sniff was impermissible, and therefore his subsequent arrest was unlawful.  Because a roadside detention "constitutes a seizure of a person and activates the protections of the Fourth Amendment[,]" ***Commonwealth v. Baldwin***, 147 A.3d 1200, 1203 (Pa. Super. 2016), we must determine whether the Officer had reasonable suspicion to detain Appellant.

This Court has held that reasonable suspicion can be supported by information supplied by a known informant where the police can independently corroborate the informant's information.  ***Commonwealth v. Ogborne,*** 599 A.2d 656, 659 (Pa. Super. 1991).  Identified informants are more reliable than anonymous informants due to the risk of prosecution for filing a false claim charge against known informants.  ***Commonwealth v. Barber***, 889 A.2d 587, 593 (Pa. Super. 2005).  "To determine whether the information provided is sufficient [for reasonable suspicion], we assess the information under the

_____

[1] The Motor Vehicle Code governs the permissible amount of window tint.  75 Pa. C.S.A. § 4524(e)(1), (e)(2)(i)-(ii).

- 6 -

totality of the circumstances.  The [informant]'s reliability, veracity, and basis of knowledge are all relevant factors in this analysis." *Id.* at 594.

Instantly, the informant provided reliable tips in the past, leading to five arrests.  N.T. Suppression Hearing, 11/17/2022, at 17-20.  For this case, the informant provided detailed information about the vehicle in which Appellant was traveling, including its make, model, color, location, and Massachusetts license plate number.  Police corroborated these details **before** detaining the vehicle to investigate the veracity of the informant's tip that the vehicle was transporting cocaine.  They also observed signs of nervousness in Appellant. Given the evidence of the informant's reliability and veracity, and the corroboration of many details of his tip prior to detaining the vehicle for a canine sniff, we conclude that the vehicle detention was lawful.

Twelve minutes after the vehicle stop, a trained canine alerted for the presence of controlled substances in the vehicle.  Appellant and the driver of the vehicle were then handcuffed and taken into custody while the police applied for a search warrant for the vehicle.  Appellant complains in his brief of the amount of time—approximately five hours—that he spent in custody pending the search of the vehicle.  Appellant's Brief at 12-13.  That delay is of no moment.  Police arrested Appellant just after the dog alerted to the presence of drugs in the car.  At that point, police had probable cause to believe Appellant committed a felony.  *Rogers*, 849 A.2d at 1192 (noting that when a dog alerts to the presence of narcotics in a vehicle, the police have

probable cause to believe an offense is being committed). The arrest, therefore, was lawful, and the duration of time between Appellant's lawful arrest and the search of the vehicle provides no grounds for relief.

Appellant's third and final argument[2] is that the canine sniff was <u>not</u> performed in a manner consistent with our Constitution because the dog put its paw on the doorframe at one point. <u>Appellant's Brief at 14-15.</u> A canine sniff is considered a search pursuant to Article I, Section 8 of the Pennsylvania Constitution. ***Commonwealth v. Johnston***, 530 A.2d 74, 79 (Pa. 1987). The Supreme Court has held "that there need not be probable cause to conduct a canine search of a place; rather, the police need merely have reasonable suspicion for believing that narcotics would be found in the place subject to the canine sniff." ***Rogers***, 849 A.2d at 1190. The ***Rogers*** Court explained that a canine sniff of a vehicle need only be supported by reasonable suspicion. ***Id.*** at 1191. The defendant in that case argued, however, that police should have had probable cause before permitting the dog to jump through the window and sniff the interior of the car. The ***Rogers*** Court did not answer that question, opining that the interior search was lawful in that case even if probable cause was required. ***Id.*** at 1192.

_____

[2] Appellant's statement of questions includes four issues, but his brief only includes three sections, in violation of Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Regardless, the fourth issue—probable cause in support of Appellant's arrest—has been addressed in the main text.

The record does not support Appellants' argument here, as it reflects that the officer *immediately* pulled the dog back from the doorframe and did not permit it to search the vehicle's interior. N.T. Suppression Hearing, 11/17/22, at 127-129. Here, unlike **Rogers**, the dog did not invade the vehicle. And, in any event, probable cause existed here, just as it did in **Rogers**, because the dog already had alerted outside the vehicle.

For the foregoing reasons, we find no merit to any of Appellant's arguments and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/29/2024